UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| EMMA KENNON, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner Of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil No. 5:17-cv-00400-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Emma Kennon seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied her claim for supplemental security income and disability insurance benefits. Ms. Kennon brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. Kennon's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff Emma Kennon initially filed an application for Title II disability insurance benefits on February 16, 2012, alleging disability beginning on November 4, 2009. [Transcript (hereinafter, "Tr.") 72.] Administrative Law Judge Christopher R. Daniels denied this request on June 14, 2013. Tr. 69–80. The Appeals Council denied Ms. Kennon's request for review on August 29, 2014. *Id.* at 23. Thereafter, Ms. Kennon did not petition for further review, making the decision on June 14, 2013, final. *Id.* On October 2, 2014, Ms. Kennon filed a second

application for Title II disability insurance benefits, alleging disability beginning February 15, 2011. *Id.* However, because the previous decision by ALJ Daniels was binding, the ALJ Roger L. Reynolds modified Ms. Kennon's date of alleged onset to June 15, 2013, pursuant to the doctrine of *res judicata*. *Id.* On June 15, 2016, ALJ Reynolds returned another unfavorable decision for Ms. Kennon. *Id.* She requested review from the Appeals Council who denied this request. *Id.* at 1.

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Ms. Kennon met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 26; *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Ms. Kennon had not engaged in substantial gainful activity since the alleged disability onset date, June 15, 2013. Tr. 26. At step two, the ALJ found Ms. Kennon to suffer from the following severe impairments: major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), chronic obstructive pulmonary disease, and plantar fibromatosis. *Id.* At step three, the ALJ determined her combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. *Id.* at 29. Before moving on to step four, the ALJ considered the record and determined that Ms. Kennon possessed the following residual functioning capacity:

> [Ms. Kennon] had the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) except no climbing of ropes, ladders or scaffolds and only occasional climbing of stairs or ramps. She can perform occasional balancing, stooping, kneeling, crouching, or crawling. She is precluded from aerobic activities

3

such as running or jumping. She cannot work with hands over the head. There can be no operation of foot pedal controls; no exposure to concentrated dust, gases, smoke, fumes, temperature extremes, excess humidity, concentrated vibration, or industrial hazards. She requires entry level work with simple, repetitive procedures. She can tolerate only occasional changes in work routines and should work in an object oriented, non-public environment with only occasional and casual contact with coworkers, supervisors, or the general public.

*Id.* at 29–30. After explaining the RFC, the ALJ found at step four that, based on her RFC, age, education, and work experience, Ms. Kennon was not capable of performing past relevant work as a machine operator and factory assembler, but was capable of performing other jobs existing in the national economy. *Id.* at 31–32. Accordingly, the ALJ found at step five that Ms. Kennon was not disabled from June 15, 2013, through the date last insured, pursuant to 20 C.F.R. §§ 404.1520(f). *Id.* at 33. Ms. Kennon filed this action for review on October 13, 2017. [R. 1.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Ms. Kennon presents two arguments to this Court as grounds for relief from the ALJ's unfavorable decision.  Specifically, she argues (1) the ALJ did not place appropriate weight on treating source opinions in determining her RFC and (2) the ALJ failed to find multiple physical impairments to be severe impairments in determining her RFC.  [R. 11-1 at 1.]  For the reasons set forth below, Ms. Kennon's arguments do not warrant a reversal of the ALJ's determination.

### A

First, Ms. Kennon argues that the ALJ's determination of her RFC is not supported by substantial evidence because ALJ Reynolds failed to give adequate weight to the RFC completed by Sandra McCoy, APRN, on October 13, 2014.  [R. 11-1 at 5.]  The Social Security Administration has set forth certain guidelines that an ALJ must follow when determining how much weight to assign a treating medical source.  The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs

5

> (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). Other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(c)(5); 416.927(c)(2)(i)-(ii), (c)(3)-(c)(5).

The regulations also contain a clear procedural requirement that an ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants to understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (cleaned up). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546.

The ALJ's written opinion explains he assigned only partial weight to Nurse McCoy's opinion because he found it inconsistent with other opinions and outside the area of Nurse

McCoy's expertise as a family practitioner.² Tr. 27. According to Nurse McCoy, Ms. Kennon demonstrated a very good ability to follow work rules and maintain personal appearance, but had little ability to function in any other observable area. *Id.*; Tr. 347–50. However, Latonia Sweet, M.D., Ms. Kennon's treating psychiatrist at the Powell County Bluegrass Comprehensive Care Center noted limitations in situational stressors, such as her children and her finances, but no noted limitations on her ability to work. Tr. 27; Tr. 282–346. While Nurse McCoy has significant familiarity with Ms. Kennon's situation, an ALJ generally gives more weight to the opinion of a specialist, such as Dr. Sweet, about medical issues related to his or her specialty, in this case, psychiatry. 20 C.F.R. § 404.1527(c)(2)(5). An opinion from a nurse or nurse practitioner is entitled to less weight than a physician's opinion, and the ALJ has discretion to determine the proper weight to accord such opinions. *Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540–41 (6th Cir. 2007).

Furthermore, even if substantial evidence supports the opposite conclusion, a reviewing Court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). While Nurse McCoy's opinions may support Ms. Kennon's position, the ALJ included substantial evidence for his decision to assign limited weight to Nurse McCoy, and the records of Dr. Sweet support the ultimate determination of the ALJ. The Court may not resolve conflicts of evidence or make credibility determinations in reviewing the ALJ. *Ulman*, 693 F.3d at 713; *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir.

---

² ALJ Reynolds refers to Nurse McCoy as "Mary McCoy," but references the records prepared by "Susan McCoy," consistent with Ms. Kennon's briefing.

7

1988). Because of this, the Court does not find the ALJ's decision to assign little weight to Nurse McCoy's opinion to be grounds for reversal or remand.

**B**

Next, Ms. Kennon claims the ALJ erred by finding her lumbar back pain, bilateral knee degenerative joint disease, ankle enthesopathy, subcalcaneal bursitis, peroneal tendonitis, and sinus tarsitis to be "non-severe," and therefore, the ALJ's decision that Ms. Kennon could perform light work was not supported by substantial evidence. [R. 11-1 at 11–12.] A physical or mental impairment is categorized as "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521(a).

Initially, the ALJ considered Ms. Kennon's foot problems and found her plantar fibromatosis to be severe. Tr. 26–29. However, at her exam, Ms. Kennon's gait and station were intact without a limp. *Id*. 379. Additionally, she had told the doctor she was able to lift twenty (20) pounds repetitively as well as perform her personal hygiene and daily functions. *Id.* at 378. The ALJ also considered Ms. Kennon's restless leg syndrome, hypertension, lumbar back pain, and bilateral knee degenerative joint disease as "non-severe" impairments. Tr. 28. But, in Ms. Kennon's statements, she states she had been managing the restless leg syndrome and hypertension for many years with no concerns. *Id.* at 481. The ALJ evaluated records from Nurse McCoy, Beatrice O. Newell, M.D., Melecio Aboro, M.D., and Clinton Ellingson, M.D. to determine that these impairments did not significantly limit her ability to perform work activities. *Id.* at 28–29.

To determine Ms. Kennon's RFC, the ALJ considered all of her ailments, both those he deemed "severe" as well as those he deemed "non-severe." Tr. 27–30. Failure to find an impairment severe when the ALJ determined Ms. Kennon to have other severe impairments is

8

not reversible error. *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In determining the RFC, the ALJ must consider limitations of both severe and non-severe impairments. *Fisk v. Astrue*, 253 F. App'x. 580, 583 (6th Cir. 2007). ALJ Reynolds considered all of Ms. Kennon's impairments and the limitations of each when ultimately determining her RFC. Tr. 26–30. Because he considered the "non-severe" impairments when determining her RFC, it is unnecessary for this Court to determine whether ALJ Reynolds erred by classifying these ailments as "non-severe." *Fisk*, 253 at 584. Thus, the Court cannot reweigh the ALJ's determination of Ms. Kennon's RFC. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Emma Kennon's Motion for Summary Judgment [R. 11] is **DENIED**, but the Commissioner's Motion for Summary Judgment [R. 13] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 26th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge